UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

JOSHUA T. FOX                                                                                        PLAINTIFF

v.                                                         CIVIL ACTION NO. 5:14-CV-P225-TBR

MAYFIELD GRAVES CO. DETENTION CTR. et al.                         DEFENDANTS

### MEMORANDUM OPINION

Plaintiff, Joshua T. Fox, filed a *pro se*, *in forma pauperis* complaint (DNs 1 and 5) pursuant to 42 U.S.C. § 1983.  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons set forth below, the action will be dismissed.

### I. SUMMARY OF CLAIMS

Plaintiff sues the "Mayfield Graves County Detention Center" (GCDC); Keefe Commissary Network Sales (Keefe); the Barcelona Nut Company; and, in her individual and official capacities, nurse Janet Fox at GCDC.  Plaintiff alleges that he became sick after eating maggot infested trail mix he bought from the prison commissary on November 7, 2014.  He alleges that the GCDC violated the Fourteenth Amendment because the "food protection law" states that he has a right to food that is adequate for individual consumption.  He alleges that Defendants Keefe and Barcelona Nut Company violated his Eighth and Fourteenth Amendment rights.  He also appears to be alleging that Defendant Keefe was in violation of consumer protection law and product liability law.  With regard to the Barcelona Nut Company, Plaintiff also alleges that it violated his equal protection right to have food that is adequate for an individual's consumption and that it breached its duty to warn consumers of a danger or defect in product and "also under the 'strick product liability law.'"

Plaintiff states that he saw the nurse two days after eating the trail mix and told her that he had been vomiting and had diarrhea since eating the maggots. Defendant Fox told him that maggots were good for him; that they are eaten in other countries; that the pains and diarrhea would pass; and that she would give him some "pep tabs." He states that he then wrote a grievance about being denied treatment, but received no response. Plaintiff states that he began having bad dreams and could not sleep or "eat food that reminded [him] of maggots with my stomach in cramps." He states that he wrote Defendant Fox who replied that she did not treat "sleep" and that he would have to talk with "mental health." He states that "mental health" told him that he was having anxiety attacks and that he needed medication before it got worse. He states that he wrote the Jailer and Defendant Fox with no reply.

After Plaintiff wrote Defendant Fox again, she "took [Plaintiff's] blood" and then said she was going to place him in segregation and place him on a broth diet. Plaintiff states, "I told her that sounds like a punishment and I refuse." He was told by Defendant Fox that he could not refuse because the jailer was already making space for him. Plaintiff states that he went to speak to the Jailer, who told him that in order not to go into segregation he would have to write that he is not sick.

According to the complaint, Plaintiff saw the doctor on November 20, 2014, and the doctor said he would give him something for his stomach. Plaintiff states that "not even a hour later the jailers came and told me to pack my things and transferred me to Crittenden Co. Detention Cet. Where they treated me for both my stomach and anxiety currently taking Dicyclomine for my intestents and hydroxyzine for my anxiety helping me sleep and eat better." As relief, he asks for unspecified monetary and punitive damages.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002).  While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

*Claim related to Keefe and Barcelona Nut Company*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs*., 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (1996).  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged

action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (per curiam) (internal quotation marks and citation omitted). Plaintiff has not presented any allegations by which Keefe's or Barcelona Nut Company's conduct could be fairly attributed to the State. Plaintiff, therefore, fails to state a claim against these Defendants under § 1983.

*Claim against GCDC related to maggot-infested food*

It is well established that prison officials "must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (internal quotation marks and citations omitted). Nevertheless, various federal courts, including the United States Court of Appeals for the Sixth Circuit in which this Court sits, have suggested that a single incident of food contamination or food poinsoning is insufficient to establish a conditions-of-confinement claim. *Smith v. Younger*, No. 98-5482, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) (holding that the presence of a worm in the plaintiff's food failed to state a conditions-of-confinement claim); *Green v. Atkinson*, 623 F.3d 278, 281 (5th Cir. 2010) (per curiam) ("A single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected."); *Tucker v. Metts*, No. 2:10-1316, 2011 WL 1085031, at *4 (D.S.C. Feb. 17, 2011) ("[T]he law is clear that a single incidence of unintended food poisoning is not a constitutional violation.").

Thus, even had GCDC been responsible for preparing or otherwise contaminating the maggot-infested food, Plaintiff would not have stated a constitutional claim against GCDC based on that one incidence of food poisoning.

*Claim regarding denial of medical treatment*

Plaintiff alleges that his Eighth Amendment rights were violated because Defendant Fox and GCDC failed to give adequate and sufficient medical treatment "by only offering the only treatment which is segregation and chicken broth." However, according to the complaint, when Defendant Fox first saw Plaintiff on November 9, 2014, she offered him "pep tabs." Also according to the complaint, although he complained to her about his inability to sleep, Defendant Fox explained to him that his problem sleeping needed to be treated by "mental health," not her. It appears he was seen by mental health. Defendant Fox saw Plaintiff again sometime between November 9, 2014, and November 20, 2014, at which time she took blood and was going to place him in segregation and provide a broth diet. Although Plaintiff seems to believe that this placement in segregation was punitive, it appears equally likely that it was designed to be for the purpose of medical observation, especially since the jailer told him that, in order not to go to segregation, Plaintiff would have to state in writing that he was not sick. Defendant Fox then called Plaintiff into her office on November 20, 2014, *i.e.*, eleven days after he had first seen her for his complaints of stomach pains, to see the doctor.

Thus, in the eleven days between when Plaintiff presented to Defendant Fox with complaints of stomach pains and when Plaintiff was transferred, Defendant Fox saw him at least twice and brought Plaintiff in to see the doctor. She offered him "pep tabs," medical segregation and a liquid diet, and took blood. It appears that she was not responsible for treating the sleep problems which according to Plaintiff he began suffering sometime between when he saw Defendant Fox on November 9, 2014, and his transfer on November 20, 2014, *i.e.*, a period of time less than eleven days.

The Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendant Fox. To establish an Eighth Amendment violation premised on inadequate medical care, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs.'" *Farmer v. Brennan*, 511 U.S. at 835 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002). Thus, to state a cognizable claim, a prisoner must show that the official "acted or failed to act despite his knowledge of a substantial risk of serious harm" to the inmate. *Terrance*, 286 F.3d at 843 (quoting *Farmer*, 511 U.S. at 842). Less flagrant conduct, however, may still evince deliberate indifference where there is "a showing of grossly inadequate care as well as a decision to take an easier but less efficacious course of treatment." *Id.* (quoting *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). Such grossly inadequate care is "medical treatment 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 844 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's belief that Defendant Fox should have done more for him merely constitutes a disagreement over medical treatment and, as such, does not state a claim under the Eighth Amendment. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). "A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim." *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003).

Plaintiff also fails to state a denial-of-medical-treatment claim against Defendant Fox in her official capacity or against GCDC.  If an action is brought against an official of a governmental entity in his or her official capacity, the suit should be construed as brought against the governmental entity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Therefore, in the case at bar, Plaintiff's claims against Defendant Fox, a GCDC employee, in her official capacity are actually brought against the Graves County government.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

When a § 1983 claim is made against a municipality, like Graves County, a court must analyze two distinct issues:  (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights*, *Tex.*, 503 U.S. 115, 120 (1992).  As the Court already has determined, Plaintiff has not alleged a constitutional violation.

In any event, "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'"  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional

deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds*, *Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct"). Here, Plaintiff has not identified any policy or custom which was the moving force of the alleged constitutional violations, and the official-capacity claims against Defendant Fox and the claim against GCDC must be dismissed.

### *State-law claims*

To the extent that Plaintiff is raising claims based on state law, the Court declines to exercise its supplemental jurisdiction over those claims because Plaintiff's federal-law claims will be dismissed. *See* 28 U.S.C. § 1367(c)(3). The state-law claims will be dismissed without prejudice.

## III. <u>CONCLUSION</u>

For the foregoing reasons, by separate Order, the Court will dismiss Plaintiff's federal claims pursuant to § 1915A(b)(1) for failure to state a claim.   Plaintiff's state-law claims will be dismissed without prejudice.

Date:


cc: Plaintiff, *pro se*
    Defendants
    Graves County Attorney
4413.009